## CHURCH and others *against* KNOX and others.

The right, or interest, of one partner in a debt due to the partnership, cannot be taken, by process of foreign attachment, to satisfy the individual debt of that partner without shewing, from the state of the partnership accounts, as between the partners, and with reference to the solvency of the partnership, what the right or interest claimed amounts to.

An execution against a partner, for his individual debt, can take only the interest of that partner in the partnership funds, subject to the accounts of the partnership.

THE plaintiffs recovered judgment, by foreign attachment, against *Joseph Hart,* for 1,623 dollars, 79 cents, and brought this *scire-facias* against *Normand Knox, Roland Lee* and *Jared Scarborough,* averring that they were, at the time the copies were left in service with them, " attorneys, factors, agents, trustees and joint debtors to said *Joseph Hart,* and *William Hart* and *John Hart* jointly ;" and that the defendants " had in their hands of the moneys of the said *Joseph Hart,* and were indebted to him in the sum of 1,700 dollars."

The cause was tried at *Hartford, February* term, 1818, before *Baldwin* and *Hosmer,* Js.

On the trial, it was proved, that when the copies in the original suit were left in service with the defendants, they were jointly indebted to *Joseph Hart, William Hart* and *John Hart,* as copartners, in the sum of 1,200 dollars. But there was no evidence before the court, to prove whether the copartnership was solvent, or insolvent ; or whether, as between the partners, there was a balance due from *Joseph* to *William* and *John,* or either of them, or a balance due from them, or either of them, to *Joseph ;* nor was there any evidence to shew what was in fact the state of the copartnership accounts, as between the partners ; nor what was the

proportion of each partner, at any time antecedent, in the funds of the company. Upon this state of the case, the defendants contended, that they were not debtors to *Joseph Hart,* as the declaration alleged. The court decided otherwise, and rendered judgment for the plaintiffs, with 400 dollars damages. The defendants thereupon moved for a new trial, on the ground, that the court in their decision had mistaken the law. This motion was reserved in the usual manner.

*T. S. Williams* and *W. W. Ellsworth,* in support of the motion, contended, 1. That the attaching creditor of *Joseph Hart,* takes his place, and his rights.

2. That the rights or interest of *Joseph Hart,* as to the company property, are subject to the state of the company accounts. *Fisk & al.* v. *Herrick & al.* 6 *Mass. Rep.* 271. *Moody* v. *Payne,* 2 *Johns. Chan. Rep.* 548. *Fox* v. *Hanbury, Cowp.* 448. *Taylor* v. *Fields,* 4 *Ves.* jun. 396. *Ozeas* v. *Johnson,* 1 *Binn.* 191. 193. *Hankey* v. *Garret,* 1 *Ves.* jun. 240. *Heydon* v. *Heydon,* 1 *Salk.* 392. This proposition is supported and illustrated, by the following considerations. First, if *A., B.* and *C.* are partners, and *A.* withdraws more than he put into the company, he has no interest. Secondly, each partner must have a valid claim, for his disbursements and charges arising in the business. Thirdly, all the debts and credits are contracted for the benefit of the general fund. Now, as it would be unjust and dishonourable for a partner to appropriate such fund to the payment of his individual debt ; the law will not lend its aid to the accomplishment of the same object in favour of a stranger. Fourthly, each partner is liable for all the debts, and is in possession of all the property, of the company.

3. That the interest of *Joseph Hart* in the funds of the company, can be ascertained, only by ascertaining the actual state of the accounts ; and in doing this, a mode of adjustment must be adopted, which will not deprive the several partners of the benefit of their *oaths.* A *certain interest* cannot be *presumed* in favour of one partner, or of his creditor who represents him ;—for if it could, *assumpsit* would lie for that partner's share.

4. That supposing the amount of *Joseph Hart's* interest to be already ascertained ; still the attaching creditor cannot

*Hartford,*
June, 1818.

*Church*
*v.*
*Knox.*

take that proportion of interest in this debt, separately and absolutely ; he can only stand in his debtor's place, and become a tenant in common with the other partners. But, by the judgment of the superior court, there is a complete severance of the debt in question.

5. That a *debt* due to a copartnership, can, in no case, be taken, like tangible property, to satisfy the several debt of one of the partners. *Lyndon* v. *Gorham & Greene & al.* 1 *Gallis.* 367.

*H. Terry* and *S. Terry*, contra, contended, 1. That at common law, the joint effects of a copartnership may be taken for the debt of one partner ; and that the proportion thus taken is the same as in ordinary cases of joint ownership, *viz.* each partner is presumed to have an equal interest. *Heydon* v. *Heydon*, 1 *Salk.* 392. *Bachurst* v. *Clinkard*, 1 *Show.* 169. [173.] *Jacky* v. *Butler*, 2 *Ld. Raym.* 871.

2. That our statute of foreign attachment(*a*) places debts on the same footing with tangible property ; and therefore, a third of the debt due from the defendants to the copartnership, is held to respond the judgment against *Joseph Hart.* *Laight* v. *Tomlinson*, 2 *Root* 233.

SWIFT, Ch. J. The ground taken by the plaintiff, in this case, is, that the tangible property of tenants in common, and co-partners, can be taken, and sold on execution, for the payment of their individual debts ; that in case of a partnership, each partner is, in law, considered to be an owner, in proportion to the number of the whole ; that the purchaser of such part, becomes tenant in common with the other partners, and is entitled to the possession : of course, on analogous principles, a creditor may, by foreign attachment, take the same proportionable part of a debt due to the partnership, for a private debt of an individual partner. The tangible property of tenants in common, may be taken and sold, by execution against either of them. Such part only can be sold as belongs to the tenant against whom the execution is issued ; and the purchaser will become co-tenant with the rest. But this rule does not apply to the case of co-partners. It is a point well settled, by the authorities, that an execution against a partner, for his separate debt, can take only the

(*a*) *Tit.* 14. *c.* 3. *s.* 1. 5.

*Hartford,*
June, 1818.

Church
*v.*
Knox.

interest of the partner, in the partnership property, subject to the partnership debts: that the interest of the partner, only, is sold, and not the effects. The purchaser will stand in the place of the partner; the interest taken will continue, subject to the same responsibilities; and the amount can be ascertained, only on a final settlement of the partnership accounts. *Moody* v. *Payne,* 2 *Johns. Ch. Rep.* 548. *Taylor* v. *Fields,* 4 *Ves.* jun. 396. *Barker* v. *Goodair,* 11 *Ves.* jun. 85. *Dutton* v. *Morrison,* 17 *Ves.* jun. 209. *The King* v. *Sanderson,* 1 *Wightwick's Excheq. Rep.* 50. 1 *Madd. Chan.* 112.

This doctrine is not only supported by authority, but is founded in the plainest principles of justice. The creditor can, by a foreign attachment, take nothing but what the absconding debtor was entitled to; and the property of one man ought not to be taken to pay the debt of another. But the rule claimed by the plaintiffs, would violate both these principles. It is well known, that in partnerships, the effects do not usually belong to the partners equally, in proportion to their number. Sometimes, one will advance the capital, which is to be returned; while the other is to transact the business; and the profits, only, are to be shared between them. The effects might be wanted, not only to pay the partnership debts, but, on a settlement of the accounts, the partner in the execution, might be a debtor to the partnership. If, then, we consider them as tenants in common, and permit a creditor to sell one half to pay the separate debt of one partner, we shall, in many instances, suffer the property of one man to be taken, to pay the debts of another; and give to a separate creditor of a partner, a right over the effects of a partnership, which such partner could not exercise; and if the purchaser should be allowed to take possession of the effects, he might dissolve, or destroy the partnership. The only mode of doing justice, is, to sell the interest of the partner, who is the debtor in the execution; and though this may be uncertain, and difficult to come at, yet this can be no reason, why a rule, manifestly unjust, should be adopted. The doctrine, then, contended for by the plaintiffs, is not supported by precedent, or principle; and furnishes no analogy applicable to the present case.

It may be asked, on what ground could the judgment, in this case, be rendered for *one third* of the debt due from the defendants to the partnership, of which the absconding debt-

or was one? There was no evidence respecting the state of the partnership concerns; what capital each partner advanced; what each owed; and whether the partnership was solvent. Suppose the whole debt due from the defendants, should be wanted, to pay the partnership debts; or, that *Joseph Hart* should be found a debtor, on settling his account; then the judgment could not be right. While the interest of *Joseph Hart* was a matter of uncertainty, how could a judgment be rendered for a sum certain?

It is, however, insisted, that the defendants are bound to state the accounts of *Joseph Hart*, with the partnership, and ascertain the balance due to him. But this would be to require an impossibility; for they have no controul of their books, and no possible legal mode of compelling a settlement of their accounts.

It is further said, if the plaintiffs have recovered more than the proportion of *Joseph Hart* in this debt, and it should be wanted for the payment of partnership debts, the other partners may call them to account, and recover back such money. At this rate, a judgment may be rendered in favour of a man for a sum certain, with a liability to refund the whole, or a part of it, on some contingency. It is sufficient to state the proposition, to show the absurdity of it. What right can a court have to say, that a certain part of a debt due to a partnership, may be taken to pay the private debt of a partner, in a suit where the partners are not parties; and then, if wanted to pay the debts of the partnership, to oblige them to resort to the creditor?

But it further appears to me, from the nature of partnerships, that one partner cannot have a separate right, in any particular debt, or article of property, belonging to the partnership, liable to his individual debt; but all the effects are a joint interest; and each partner can have a separate interest only in his share, upon the winding up and settlement of the partnership concerns.

It is said, that, at this rate, the property of partners may be placed beyond the reach of their individual debts, by foreign attachment. If the legislature has not made provision, by which the actual interest of a partner, in the partnership property, can be reached, it would be proper for them, by a new law, to supply the defect; but this will not warrant a court to introduce a remedy, which violates the principles

on which partnerships are founded : for contracts of this kind are recognized by law ; and no principle, ought to be adopted, which may terminate in their utter destruction.  —|—

It is also urged, that this point was settled by the Supreme Court of Errors, in the case of *Laight* v. *Tomlinson,* 2 *Root* 233. All that appears, in that case, is, that the superior court, in the case of a foreign attachment, rendered judgment against the garnishee, for the whole sum due to a partnership ; and the Supreme Court, for that reason, with others, reversed the judgment, with the remark, that it ought not to have been for the whole sum, but only the proportion of the absconding debtor, in the debt due to the partnership. But it does not appear, that the point arising in this case, was ever suggested, or considered.

I think a new trial ought to be granted.

EDMOND, SMITH and PETERS, Js. were of the same opinion.

BRAINARD, J. *Joseph Hart* was indebted to the plaintiffs. The defendants were indebted to *Joseph Hart, William Hart* and *John Hart,* as merchants in company. The plaintiffs brought their factorising suit against *Joseph Hart,* and left copies with the defendants, as debtors to *Joseph Hart ;* recovered judgment ; and now bring their *scire-facias,* to recover of the defendants such proportion of the debt due from them, to *Joseph Hart, William Hart* and *John Hart,* as they claim to belong to *Joseph Hart.* Can this process be supported ? Are *Knox, Lee* and *Scarborough,* the defendants, in a legal sense, debtors to *Joseph Hart* alone ? Our statute regarding foreign attachment,(*a*) says, " that debts due an absent or absconding debtor, shall be considered his effects, in the hands of the person from whom the same are due." This statute must have a consistent construction ; such a construction as will support itself, and can be carried into effect. Debts, by the statute, are made effects ; but can any share, or portion of this debt, be taken and carried out, as the exclusive property of *Joseph Hart* ?

This, I think, is a sound position : that a creditor of *Joseph Hart,* could not have a greater controul of this debt, than *Joseph Hart* himself could ; and what controul could be

(*a*) *Tit.* 14. *c.* 3. *s.* 5.

*Hartford,*
June, 1818.

Church
*v.*
Knox.

*Hartford,*
*June, 1818.*

Church
*v.*
Knox.

have over it? As a partner and agent, he could receive and discharge the whole : but at no moment, and under no circumstances, could he claim any particular part, or portion of this debt. He could never say to *Knox, Lee* and *Scarborough*—" You owe me, and I demand one third, one fourth, or one fifth of this debt." A debt due a company, is, in its nature, entire and indivisible. If *A.* owes *B.,* he owes him a debt entire. If *A.* owes *B., C.* and *D.,* he owes them, collectively, a debt entire. What, on this *scire-facias,* could be the judgment? If any could be rendered in favour of the plaintiffs, it must be for a certain liquidated sum. This, in my view, would lead to consequences, seriously injurious to the rights of partners, and vitally destructive of all partnership connexions. A debt due a company, is pledged to the company for the payment of its debts. It is a fund on which the partners have a right to calculate. This debt cannot be seized, or arrested, by a creditor of any one individual of the company, for this reason ; from its very nature, partition cannot be made of it. This debt, unless collected, and all other outstanding debts, must depend on the final settlement of the company's concerns. That any particular portion of a debt, due to three or more partners, dependent on the adjustment of their copartnership concerns, can be attached, or arrested, by a creditor of an individual of the company, seems to be inconsistent.

What could be taken, and how could it be disposed of? How could a court, on a process of *scire-facias,* ascertain, that one third, or any other proportion of a debt due from *Knox, Lee* and *Scarborough,* to *Joseph Hart, William Hart* and *John Hart,* could be property, or effects of *Joseph Hart? Joseph Hart* might not own the tenth part of the capital of the company. Besides, the company, as such, might be bankrupt ; *Joseph Hart,* as an individual, might be bankrupt ; and *William Hart* and *John Hart,* as individuals, abundantly solvent.

In this course of things, by necessary consequence, the private property of an individual member, may be taken for the private debt of a bankrupt partner, whose proportion of the company's funds may be first exhausted in discharge of his private debts, and thereby occasion a bankruptcy of the company ; and then the deficiency must be supplied, out of the private property of the other partners. *A., B.* and *C.,*

form a company, and put into the company stock 10,000 dollars, each. *A.*, as an individual, is a bankrupt, and his 10,000 dollars are taken, for his private debts. The company owe 30,000 dollars, to pay which, not only each of *B.*'s and *C.*'s 10,000 dollars must go, but they must each contribute 5,000 dollars, out of his own private property, to make up the deficiency.

The private property of an individual member of a company must always be liable for the company's debts ; but never holden for the private debts of another individual member of the company. Indeed, I do not see how the court, for the want of parties, and the means of ascertaining facts, could determine what proportion of this debt belonged to *Joseph Hart*. *Knox, Lee* and *Scarborough* could give no information on the subject. They had no means of knowledge. They could only say, " We are indebted to *Joseph Hart, William Hart* and *John Hart,* in a certain sum : how much of it is *Joseph Hart's,* or whether any, we know not."

In the argument, it was suggested, and indeed insisted on, that *Joseph Hart's* right or proportion of this debt could be taken as his effects, and held responsible for the plaintiffs' demand, on the final settlement of the company's concerns. But the question must always recur ; for what, on this *scire-facias,* is the judgment to be ? Is it to be for an unknown, unliquidated portion of property or interest, which is not, and never can be, ascertained, until the final settlement of all accounts and partnership concerns between *Joseph Hart, William Hart* and *John Hart ?* This is too absurd. A process must be void, on which a court cannot ascertain the debt, or damages, and render judgment for a precise sum.

Whether the proportion of any visible, or tangible property, belonging to an individual of a company, can be taken for his private debt, is a different question. The authorities on this point, are not perfectly uniform. But be it so : there is no embarrassment to the court. They are not obliged to seek for hidden things. The court ascertain the debt : the sheriff finds the property, visible and tangible. Even from this doctrine, inconveniencies may result ; but if the authorities support it as inseparable from copartnerships, such inconveniences, so far as they extend, must be submitted to, as unavoidable evils. But should this doctrine be admitted, it goes no further.

*Hartford,*
*June,* 1818.

Church
*v.*
Knox.

Suppose a ship should arrive at *Hartford,* owned by *Joseph Hart, William Hart* and *John Hart;* with a cargo, also owned by them ; and this cargo should be sold to *Knox, Lee* and *Scarborough,* on a credit. *Church* and company, as creditors of *Joseph Hart,* could attach such proportion of the ship as he might own ; but could not, if my reasoning be correct, touch the debt due from *Knox, Lee* and *Scarborough,* because *they* did not owe *him.*

HOSMER, J.   It is the policy of the law to render all the property of an individual subject to execution for his debts. This, private justice and public convenience, imperiously demand.   Hence, an individual, by becoming a copartner, and putting his property into a joint fund, cannot withdraw it from execution.   The same is true in regard to the attachment of it ; for if liable to execution, it may always be held in the custody of the law for that purpose.

I will first express my opinion relative to tangible property.   It is unnecessary to have recurrence to first principles. On this subject the law has been clearly settled for more than a century.   It has long been established, that on an execution against a partner, the sheriff must seize all the joint property of the copartnership, and sell an undivided moiety, if there are two partners only ; and " the vendee will be tenant in common with the other partner." *Heydon* v. *Heydon,* 1 *Salk.* 392. *Jacky* v. *Butler,* 2 *Ld. Raym.* 871. *Backurst* v. *Clinkard,* 1 *Show.* 169. *Pope* v. *Harman, Comb.* 217. *Eddie* v. *Davidson, Dougl.* 650.   The right of taking the goods of a partnership, for the debt of an individual partner, and selling his share in them, has, in chancery, been uniformly recognized. *Hankey* v. *Garret,* 1 *Ves.* jun. 236. *West* v. *Skip,* 1 *Ves.* 239.   1 *Madd. Chan.* 112.

It is unquestionably clear, that the sheriff, pursuing the command of the execution, must seize the property, and, at the time of sale, deliver it to the vendee.   " Execution signifieth in law, the obtaining of actual possession of any thing, acquired by judgment of law." *Co. Litt.* 154.   In *Backurst* v. *Clinkard,* before cited, it is said, " on a *scire-facias* against one, or two, or more partners, the sheriff must seize the joint property."   The necessity of this is too obvious to need insisting on.   If the goods are left with the debtor, they may

be taken by a subsequent execution. *Barnes & al.* v. *Billington & al.* 4 *Day* 85, 6. *in nota.*

The property sold by the sheriff, is the share of the execution debtor only. It is said, in *Hankey* v. *Garret*, "if a separate creditor attaches in execution the joint fund, which he must always do, the vendee under the execution and the other partner are tenants in common, and he must hold it subject to all the rights of the other partner. The separate creditor has no right against the joint property, further than the interest of the partner indebted to him; that is, his share upon a division of the surplus, subject to the accounts of the copartnership. *Field* v. *Taylor*, 4 *Ves.* jun. 396. *Fox* v. *Hanbury*, *Cowp.* 445. *West* v. *Skip*, 1 *Ves.* 239. *Eddie* v. *Davidson*, *Dougl.* 627. But the legal presumption is, in absence of all proof, that the partners hold in equal shares. This position is established by the cases already cited. (*Vid. Jacky* v. *Butler*, *Heydon* v. *Heydon*, *Pope* v. *Harman*.) In *Hankey* v. *Garret*, 1 *Ves.* jun. 240. it is said by *Buller*, J. "I admit, in case of judgment against one of two partners, the joint estate is only to be taken, as to a moiety." The necessity of the case, as well as uniform practice, establish this proposition. Unless the law were so, the sale of copartnership property on execution, for the debt of one of the partners, would be manifestly subverted. If no person could even form a conjecture, as to the amount of what he should purchase, but must first resort to a suit, for the ascertainment of the copartnership accounts, who would become a vendee? It is a maxim, that *jura adaptant ad ea quæ frequentius accident.* Partnerships are generally solvent, and the share of each partner adequate to the satisfaction of his debts. It is a sufficient guard to the partners, not debtors, to hold, that the apparent proportion of the joint property shall be presumed to be vested in each, until the state of their accounts render a precise ascertainment necessary. On this basis, sales by execution against one of the partners, have been placed. If the partners, other than the person for whose debt the joint property has been sold, on the fair adjustment of their accounts, or by reason of the insolvency of the copartnership, are entitled to the estate disposed of, chancery will, on their application, give them the requisite redress. *Taylor* v. *Field*, 4 *Ves.* jun. 396. It is said, that the sale, on an execution against

*Hartford,*
June, 1818.

Church
*v.*
Knox.

one of the partners, levied on the joint property, may be stopped by injunction, until the accounts are adjusted. 1 *Madd. Chan.* 112. This principle is denied in *Moody* v. *Paine & al.* 2 *Johns. Chan. Rep.* 548. But, the decision of the point is entirely unnecessary. If such a remedy is admissible, it must be had on the bill of the partners who request the benefit of the injunction. In the case just cited, it is determined, that " the interest of one partner in the partnership property, may be taken and sold under an execution at law, in a judgment against such partner, for his separate debt ; and equity will not stop such execution, or sale, by injunction, until the partnership accounts are taken and liquidated." The reasons assigned are very convincing, and perfectly apposite to the doctrine I have advanced. " The principle cannot go to stay executions at law, in every case against the partnership property of one partner, who owed separate debts, until the disclosure and liquidation of the concerns of the copartnership. This would produce inconceivable delay and embarrassment, in respect to separate creditors. If these creditors can sell only subject to the joint creditors, there is no harm in suffering them to go on at law ; and if any sacrifice of the interest of the separate partner is made, by reason of the uncertainty, it affects only that partner, who does not here raise the objection." Rejecting all theoretical speculations on subjects clearly settled, this is the result, as to the tangible property of a partnership. It may be sold, on execution against one of the partners for his individual debt ; the vendee holds the share of that partner, subject to the claims of the others ; and until the other partners, by their application, demonstrate what that share is, the vendee is *prima facie* owner of a proportion of the effects purchased, according to the number of the copartners.

The law relative to the attachment of debts, under the statute of *foreign attachment,* with an exception, which, in no respect, varies the principle, is precisely analogous to that which relates to tangible property. In the first place, " all the goods or effects," of an absent or absconding debtor, not accessible, may be attached, to the same extent as if they were tangible. The debts due to an absent or absconding debtor, are, by law, considered as effects in the hands of the persons from

whom the same are due. 1 *Stat. Conn. tit.* 14. *c.* 1. *s.* 5. Now, if all the effects of an absent or absconding debtor may be attached, and if debts are " effects," what part of a man's debts is protected ? It is little better than trifling with the court, to say, that the debt due to the copartnership, was not the debt of *Joseph Hart.* It was his, in the same sense, that the tangible property of the copartnership was his.

The object of the legislature, in rendering debts attachable, it is not difficult to ascertain. It was to make all the property of a debtor who had absconded, liable to his creditors. Personal effects, separate debts, and joint debts, are put on the same footing, and for the self same reason. Private justice, and public policy, in a country where much property remains in action, and many copartnerships exist, equally demand it. This point, as will appear from a case I shall hereafter cite, has been decided in the Supreme Court of Errors.

The debts of a copartnership, for demands against one of the partners, are attachable, under the same limitation, and with the same consequences, as apply to tangible property. The presumption of law, in relation to the partner's right to a proportional share of the debt, is precisely the same, as it is respecting visible estate. In the absence of proof, when there are three partners, each must be considered as entitled to a third. At the same time, the creditor must receive the money, subject to all the rights of the other partners. There is a difference in the mode of effectuating the judgment, between the case of tangible property, and of debts attached. In the latter instance, the creditor recovers a certain part of the debt ; and the joint property, is, of course, divided. This infers no difference in the principle, but adapts it to the subject, according to its nature. Indeed, a similar case in respect of tangible property, may exist. If a sum of money belonging to a partnership, were levied on for the debt of one of the partners, it would not be correct for the sheriff to appropriate the whole, but his proportional share, only. This separable property must be separated, and a part endorsed on the creditor's execution. No difficulty arises from this source. It is more favourable to the partners not indebted, than the sale and delivery of joint property, inasmuch as it is more for their interest to have their proportion in hand,

than to become tenants in common with a purchaser. In *Laight* v. *Tomlinson,* 2 *Root,* 233. the Supreme Court of Errors settled the point of controversy between the parties before us. They decided, that a proportion of debt which a person owed a copartnership, was recoverable against a garnishee, for the debt due to the creditor from one of the partners.

A joint debt due to several persons, which unquestionably is attachable for the debt of one of them, presents the same difficulty, supposed to exist in the principal case. The proportions of property are often unknown ; and a part of the joint obligees may have entitled themselves to the entire debt. The attaching creditor, in such case, must receive the apparent share of his debtor, subject to the rights of the other obligees.

It has been said, that the copartners have a confidence in each other, but none in the creditor, who may be insolvent ; and that there is a gross hardship in compelling the partners not indebted, to look to him for restitution, in any event. This argument proves too much. It is equally applicable to tangible property, the vendee of which may be a bankrupt, and dispose of the estate beyond all accessibility. In the warmth of argument, established law is forgotten, and exemption from all possible inconvenience, is demanded. A small evil must be submitted to, in the acquisition of a greater good. I, however, do not admit, that the balance of inconvenience is in favour of the defendants' doctrine. The principles contended for, would, in effect, render joint property and joint effects, unattachable ; and eventually put it in the power of every person, by forming a partnership, to put all his property beyond the reach of his creditors.

The case cited from 6 *Mass. Rep.* 271. is no authority here. If correct, which I cannot admit, it probably is founded in the peculiar practice in that state, where there is no court of chancery. It may be considered a requisite guard to a copartnership, where the redress of a court of equity cannot be had, after the sale, or appropriation of partnership property, for the debt of one of the partners.

The law, in relation to tangible property, and debts belonging to a copartnership, rests on the same ground. There is no more difficulty existing in one case, than in the other ; and they are both attachable for the debt of one of the copart-

ners. I have heard no argument, nor been able to supply one from my own reflection, which makes any real difference between them. I must be fully persuaded, before I can concur in limiting a law so politic and beneficial, as that of foreign attachment.

I am of opinion, that the decision of the court, in the case before us, was entirely correct; and would not advise a new trial.

CHAPMAN, J. was of the same opinion.

TRUMBULL and GOULD, Js. gave no opinion; the former being related to one of the defendants, and the latter having been absent, on account of indisposition, when the case was argued.

New trial to be granted.