# WHEELING.

## SCRUGGS *v.* BURRUSS.

## CAREY & Co. *v.* BURRUSS.

Submitted January 15, 1885.—Decided April 11, 1885.

1. Where a deed of trust on personal property is executed by the members of a firm to secure the debts of the firm, and the interest of creditors and purchasers for value without notice are not affected, the question, whether it was properly acknowledged and recorded, is not material. (p. 674.)

2 One member of a firm may execute a deed of trust on personal property to secure the creditors generally of the partnership. (p. 674.)

3. Where a deed of trust has been executed on personal property of a partnership by a member of a firm for the benefit of its creditors generally, and two of the firm-creditors without notice of such deed have attachments sued out and levied on *the interest* of one member of the firm in the partnership property, such levy does not give such creditors priority over the other partnership creditors secured in the deed. (p. 675.)

The facts of the case are fully stated in the opinion of the Court.

*J. W. Harris* for appellants.

*Dennis & Dennis* for appellee.

JOHNSON, PRESIDENT:

On July 22, 1878, Kate McK. Burruss and John B. Pitzer, as composing the firm of Burruss & Co., executed to A. E. T. Scruggs, trustee, a deed for all the choses in action of said firm and all the personal property of the firm described as " goods, wares and merchandise, * * in the storehouse occupied by said Burruss & Co., situated in the town of Alderson, in Monroe county, West Virginia, &c," in trust to secure the following debts due from said Burruss & Co : Among the debts due and so provided for, was one to Elbert Witz & Co. for $195.00, also one to James Carey & Co. for $835.30. This deed was acknowledged by Kate McK. Bur-

russ and J. B. Pitzer before A. E. T. Scruggs the day it bears date; but there was no privy examination of said Kate, when she acknowledged it. On July 24, 1878, the said deed was recorded.

Elhart Witz & Co. brought an action of *assumpsit* in the circuit court of Monroe county against said Burruss & Co. for their said debt, and affidavit and bond having been filed on the 19th day of July, 1878, an order of attachment issued requiring the officer " to attach and take into his possession the estate of the defendant J. B. Pitzer, sufficient to pay the sum of $193.57 with interest from the 5th day of March, 1878, till paid," &c. The ground for the attachment was that the defendant, Pitzer, was a non-resident of the State.

The return on the order of attachment is : " Executed the within by levying on *the interest* of defendant J. B. Pitzer, in stock of goods of the firm of Burruss & Co., at Alderson, West Virginia, and taking the same in possession this 20th day of July, 1878."

James Carey & Co. also brought suit against the firm of Burruss & Co.; and on affidavit filed similar to that in the other suit on the 19th day of July an attachment issued, which required the officer " to attach and take into possession the estate of the defendant, J. B. Pitzer, sufficient to pay the sum of $735.30 with interest, &c." The return on this order is : " Executed the within by levying on and attaching *the interest* of the defendant, J. B. Pitzer, in stock of goods, wares and merchandise belonging to the firm of Burruss & Co., at Alderson, West Virginia, and taking the same into possession this 20th day of July, 1878." There was a plea in abatement filed in this case also an affidavit denying the partnership and showing that F. N. Burruss was not a partner with Pitzer, but that his wife, Kate McK. Burruss, was such partner. The issue on the plea was found for defendant Pitzer, and the plaintiff's writ and attachment were quashed. The plaintiff obtained a writ of error to the judgment, and this court held, that a married woman living with her husband could not legally enter into a partnership, and that a contract of partnership with such married woman is void, and reversed the judgment and remanded the case with instructions to permit the plaintiff, if he asked to do so, to withdraw

his replication, and to strike out the plea as filed too late, and proceed with the case. (20 W. Va. 571.) After the case went back to the circuit court, on March 22, 1883, the plea in abatement was withdrawn, and, neither party requiring a jury, the case was submitted to the court in lieu of a jury; and "the court found for the plaintiff against the defendant, J. B. Pitzer, the sum of $953.14 with interest from the 20th of March, 1883," and entered a judgment in favor of the plaintiffs against "J. B. Pitzer, one of the equal partners of the said firm of Burruss & Co., the sum of $953.14 with interest as aforesaid, and their costs by them about their suit in this court in their behalf expended; and as to the defendant F. N. Burruss the court doth find for said defendant," and on the same day and at the same time entered judgment on the attachment.

On the first Monday of September, 1879, the said trustee, Scruggs, filed his bill in the circuit court of Monroe county against R. McK. Burruss and J. B. Pitzer, the sheriff of Monroe county, the firm of James Carey & Co., and also the said firm of Elhart Witz & Co. and others, and alleged, that the said Kate McK. Burruss and Pitzer were partners and as such carried on business at Alderson, W. Va., and executed the deed of trust before referred to to the plaintiff to secure their creditors; that said trust-deed was duly recorded; that the object of said deed was to apply *pro rata* the whole of the assets of said firm to the payment of the liabilities of the firm; that directly after said deed was executed plaintiff took possession of said goods and all said evidences of debt, of which he had any knowledge, and proceeded to sell said goods and collect said debts as rapidly as possible; that, just before he took possession of said goods, attachments were issued by the firm of Elhart Witz & Co., and James Carey & Co. against said Pitzer, and were levied on said goods, as plaintiff is informed, by W. W. Pence, sheriff of Monroe county, &c. The plaintiff prayed, that a commissioner of the court might be directed to report an account of the debts provided for in said deed of trust, and a settlement made of plaintiff's accounts as trustee, and a distribution directed of the said moneys.

Elhart Witz & Co. answered the bill, and in their answer

they set up their judgment and attachment and claimed priority over all the other creditors of said firm. They denied Kate McK. Burruss had or ever did have any interest whatever in either of said firms, but averred that the partners were F. N. Burruss and J. B. Pitzer, who owned said goods and conducted said business as equal partners. They exhibit their attachment and the return thereon.

The firm of James Carey & Co. also answered to the bill, and in their answer they say : " That the said F. N. Burruss and J. B. Pitzer, partners, composing the two firms of Burruss & Pitzer and Burruss & Co., are indebted to them on three negotiable notes," which they describe. They make no reference to their attachment at all in the answer. They afterwards filed a bill of injunction setting up their alleged attachment-lien, and praying that the receiver, Harris, might be enjoined from disbursing all the money in his hands, and be required to retain sufficient to pay their debt, if they should succeed in reversing the judgment rendered at law in their case then pending in the Appellate Court. The injunction was granted.

The first decree in *Scruggs* v. *Burruss et als.* was rendered October 17, 1879, referring the cause to a commissioner. The next decree was rendered May 19, 1880, when the case was heard on among other things the report of the commissioner and exception filed thereto by Elhart Witz & Co. The exception was, that their debt was not preferred by the commissioner. The court modified the report by making the debt of the said firm a preferred debt, and required that it should be paid in full, before any of the non-preferred debts were paid. The decree appointed John W. Harris, special receiver in the cause, and ordered the trustee, Scruggs, to pay to said receiver the sum of $3,342.82, with interest from May 12, 1880, the amount ascertained to be in the hands of the said trustee, and ordered said receiver to disburse the same to those entitled to receive it according to said report as modified.

On March 22, 1883, after Carey & Co. had recovered their judgment and also the judgment on their attachment, as above set forth, the two causes of *Scruggs* v. *Burruss et als* and *Carey & Co.* v. *Burruss & Co.* were heard together ; and

85

the court held that Carey & Co. "by virtue of their attachment on the interest of the defendant Pitzer in the stock of goods, wares and merchandise of the said firm of Burruss & Co., at Alderson, West Virginia, now have a subsisting prior lien on one half of the fund arising from the sale of said stock of goods, wares and merchandise made under the deed of trust filed as an exhibit in the first of these causes, which fund is now in the hands of John W. Harris, as special receiver of the court in said cause; and the decree required the said receiver to pay to said Carey & Co. the amount of their judgment with interest and costs, and to distribute the residue according to the report of said Logan as modified.

From the two decrees rendered May 19, 1880, and March 22, 1883, respectively, the plaintffs, Scruggs,. Harris, special receiver, and the creditor, John T. Holliday, appealed.

From the view which we take of these cases, they will be easily disposed of. The important question is: Did the defendants, Elhart Witz & Co. and James Carey & Co. by virtue of their attachments respectively acquire priority over the other partnership-creditors of Burruss & Co.? If they did not, then they certainly are not injured by the deed of trust. As far as these causes are concerned, it is immaterial, whether the deed of trust was recorded or not, as the failure to record it would only render it void "as to creditors and subsequent purchasers for valuable consideration without notice." (Section 5, chapter 74 of the Code.)

There are no creditors here to suffer by said deed; all as far as the record show are protected by the deed. If it was properly recorded, it could not affect the said creditors claiming priority, as their attachments were levied before any attempt was made to record the deed.

It is not clear from the record who was the partner of J. Pitzer. In the law case of *Carey & Co.* v. *Burruss & Co.* it was decided, that F. N. Burruss was not a partner; and in the case of *Elhart Witz & Co.* v. *Burruss & Co.* it was held, that he was a partner. But there is no doubt, that J. B. Pitzer was a partner in the firm of Burruss & Co., and that he made the deed of trust to secure equally all the creditors of said firm. An assignment made by one partner of the effects of the firm to pay the creditors of the firm generally will

bind the other partners; and so it is with the deed of trust executed for the same purpose. *Robinson & Co.* v. *Crowder, Clough & Co.*, 4 McCord 519; *Deckard* v. *Case*, 5 Watts 22; *Winston* v. *Ewing*, 1 Ala. 130, per Collier, Judge.

The only other question necessary to be considered is: Do the attachments give priority over the other creditors?

In *Skipp* v. *Harwood Cow*, 451, it was held, that a creditor of one partner, who has the partnership-effects levied on, can only have the undivided interest of his debtor. He must take it in the same manner as the debtor himself had it, and subject to the rights of the other partners. In *Ex parte Smith*, 16 Johns. 106, the Court said : " When an execution issues for the separate debt of one partner, it has been the constant practice to take the share, which such partner has in the partnership-property; but says Collier, Judge, in *Winston* v. *Ewing*, *supra*: ' It has been settled at least since the case of *Fox* v. *Honburg*, (Cow. 445,) that the sheriff can sell only the actual interest, which such party has in the partnership-property after the accounts are settled, or subject to the partnership-debts. The separate creditor takes it in the same manner as the debtor himself had it, and subject to the rights of the other partner.' " He cites : *Moody* v. *Payne*, 2 Johns. Ch. 548; *Wilson & Gibbs* v *Cousin*, 2 Johns. 280; *Ridgeley* v. *Carey*, 4 Har. & McHen. 167; *Price* v. *Jackson*, 6 Mass. 242; *Tappan* v. *Blaisedell*, 5 N. H. 190; *Knox* v. *Summers*, 4 Yeates, 477; *Doner* v. *Staufer*, 1 Pen. & W. 198; *Brewster* v. *Hammett*, 4 Conn. 510; *Barber* v. *Hartford Bank*, 9 Conn. 407; *Church* v. *Knox*, 2 Conn. 514.

In 1 Am. Leading Cases 579, it is said, that it is settled by the weight of the best authorities, that a court of equity will not interfere, the firm being solvent, to stop an execution at law in favor of one for his individual debt against a partner, levied on the partnership-property until the partnership-accounts have been taken; but that the property is sold under such execution subject to the partnership-debts, and the claims of the other partner; and the interest vested in the purchaser is just that which the partner himself had, that is, the residual interest after the settlement of the firm-accounts; and this principle has been repeatedly affirmed. The following authorities are cited : *United States* v. *Hark*, 8 Pet. 271;

*Nicoll* v. *Mumford*, 4 Johns. Ch. 523; *Averill* v. *Loucks*, 6 Barb. 20; *Muir* v. *Litch*, 7 *Id.* 341; *Knox* v. *Summers*, 4 Yeates 477; *Doner* v. *Staufer*, 1 Pen. & W. 198; *Snodgrass's Appeal*, 1 Har. 471; *Pierce* v. *Jackson*, 6 Mass. 242; *Commercial Bank* v. *Wilkens*, 1 Greenl. 28; *Filley* v. *Phelps*, 18 Conn. 296; *Morrison* v. *Blodgett*, 8 N. H. 238; *Christian* v. *Ellis*, 1 Grat. 396, *White* v. *Woodward*, 8 B. Mon. 484; *Sutcliffe* v. *Dohrman*, 18 Ohio 181; *Atwood* v. *Meredith*, 37 Miss. 636.

It is also said that for a partnership-debt, though there be no judgment except against one partner, in a suit brought against the partners the property may on execution be sold absolutely. (1 Am. Leading Cases 578.) "For a partnership debt the entire property in the specific thing must be sold even in a judgment against one of the partners, because through the medium of the execution the law compels him to make the same application of the joint funds to the joint debts, that it was undoubtedly competent for him to make voluntarily. The sheriff levies and sells the entire property, because the partner-defendant has no specific share, that may be levied upon and sold separately, and even were that otherwise, yet unless the sale should make a dissolution of the partnership *pro tanto*, the remainder would not be the property of the other partner individually but of the firm, and liable to execution by any other joint creditor, so that the Sheriff might as well go on and levy the whole at once. Besides as the other partners would be liable to contribution, their remaining interest in the effects sold being carried into the partnership-account would entitle them to a credit exactly equal to what should be necessary to reimburse the partner defendant the loss of his individual share." Gibson C. J., in *Taylor & Fitzsimmons* v. *Henderson*, 17 S. & R. 453.

It may be, that if Elhart Witz & Co. and Carey & Co. had sued out attachments against the firm of Burruss & Co. and had had them levied on the firm-property, they could in that way have obtained priority over the other creditors of the firm. This question does not arise in this case and is not here decided; but it is very clear, that they did not obtain such attachments, nor were they levied on the partnership property. The attachments, as we have seen, did not order the officer to attach the partnership-property, but " to attach

and take into his possession the estate of the *defendant*, J. B. Pitzer," sufficient to pay the debts of the firm ; and the return showed that he did attach and take into his possession the " *interest* of the defendant J. B. Pitzer, in stock of goods, wares and merchandise belonging to the firm of Burruss & Co. at Alderson, West Virginia." It was then only the interest of said Pitzer in the firm-property which they attached. That interest might be something, or it might be nothing. A settlement of the partnership might show, that Pitzer had drawn from the firm all or more than all he was entitled to, and that he had no interest. These attachments do not give the attaching creditors any priority over the other partnership-creditors. If after the partnership is settled, he has any interest, it might and properly would give them priority on that interest. That questions from the report of the commissioner would seem to be immaterial, as it is agreed in the cause, that the liens secured by the trust-deed amounted to $8,596.64 ; that the amount of the trust-subject realized by or chargeable to the trustee amounted to $3,342.84 after deducting the costs and expenses of executing the trust; and that he has not been charged with anything more, nor is there anything in the record to show that he is chargeable with any further sum.

The decrees of May 19, 1880, and March 22, 1883, are reversed with costs to the appellants against Elhart Witz & Co. and James Carey & Co.; and this case is remanded with instructions, to distribute the fund *pro rata* among the parties entitled thereto under said trust-deed, according to the principles of this opinion.

REVERSED.   REMANDED.